Pleasure to be with you all in person. I want to focus the bulk of my argument today, of course, pending any questions your honors may have on the jury instruction issue, and I want to specifically identify the error that we argue was sort of permeated the jury instruction on our client's Eighth Amendment sexual assault claim, and also explain why we believe the error was both plain and prejudicial to Mr. DeJesus. As your honors know, our client's claim against Sergeant Willie Lewis was in the nature of And specifically, and I apologize in advance for the vivid language given the nature of the case, our client allege and alleges that Sergeant Lewis essentially sexually assaulted him in prison by digitally penetrating his anus. Mr. DeJesus was initially appointed counsel. His counsel withdrew before trial, and Mr. DeJesus proceeded to trial pro se and did his best to try his own case. On the jury instruction issue, just because that's where you said you want to focus, I understand that. Is there ever a way for law enforcement or corrections personnel to do a, to digitally penetrate somebody's anus for law enforcement purposes? Yes, I believe so, and the Sconia's case on which we rely, this court's decision last year I think recognizes that there's circumstances when that can be, yes your honor. If that's the case, then isn't it for the jury then to decide whether it is constitutionally excessive, meaning the motive was not for legitimate law enforcement purposes, but instead was to cause harm or pain, or was itself problematic, that again there wasn't legitimate purposes for doing so. The manner in which it was done, the circumstances under which it was done would indicate whether it is legitimate law enforcement, or instead is something far, far different. And if that's the case, then why is this jury instruction incorrect, which asks the jury to decide, is this malicious or, and sadistic, which is the constitutional threshold, by looking at these factors, or is it instead a legitimate purpose, if this can be done in a legitimate way? I think I understand the question, and I appreciate it. I'll answer it in summary fashion, and then I'm happy to go through the jury instruction in more detail. I think in summary what our argument would be is that Sconier's carves out a different category for these sexual assault claims, and prescribes I think a slightly different order of operations. I think under Sconier's, a correct, a truly correct jury instruction would have said, for example, as you may know your honor, that the first element that Mr. DeJesus was required to prove under the jury instruction, let me just make sure I have it in front of me. Was if it happened. If he was digitally penetrated. Right, in other words, did it in fact happen. Exactly, exactly. Because they had alleged it didn't in fact happen, or the other side. Exactly right. And then the second element that he was required to prove, and I think this goes to your honor's point. Was it excessive? Correct. Was it excessive force? And then it refers to a sort of elaboration on the second page of the written jury instructions that elaborates all the relevant. I guess what I'm asking is, is this, to fast forward a little bit, isn't that element and the elements that are the factors that a jury was to consider, go to distinguishing between, as Scania's laid out, I think beautifully and well, that there is legitimate conduct and there is absolutely illegitimate conduct. And the gateway between them is malice and sadism, and is there legitimate law enforcement purposes or peniological purposes or not. The very things that the jury instruction seems to be trying to elicit. I think your point is well taken, but I think the jury has led us astray unless they're advised that under Scania's, and obviously there's a timing issue here in the sense that the jury instruction was issued before Scania's, but we're assessing plain error at the time today with Scania's having been issued. I think the jury's led astray unless they're advised that under Scania's a sexual assault is basically always excessive force, right, and they can be confused in looking at this jury instruction. But I guess the question is, there's no doubt that a sexual assault is what you say, but the question is, is this a sexual assault? I mean, it's not clear that it's a sexual assault until the jury says this is a sexual assault. Right, absolutely. Do you agree with that? I agree with you, and in fact, your honor, that goes to I think one of the ways that this jury instruction I think is erroneous, because if there had been a question or even a fragmented set of questions that asked the jury to find, is this a sexual assault, right, then that would be basically dispositive of the issue and that would have been a correct jury instruction. Isn't that though what the excessive force element and the factors that are considered are trying to drive at is that very question, which is, we're trying to, again, I look at it like a gateway. So this happened, first of all, did it happen? Yes, it happened. Second question, if it happened, is this a legitimate use of force for a penological goal or is this something very, very different? And how do you consider that? What was the motive? How did it happen? What's the element of force that was done, because obviously one done for a medical purpose is very different than one done for a sadistic purpose. All of those things. I guess, how is that, the jury instruction, wrong to identify those as factors for the jury to consider to make the ultimate decision on excessiveness? I suppose, your honor, that our argument would be, again, that until Sconiers, this court had not held that sexual assault was categorically per se excessive force, right? I think that was a novel holding of Sconiers. And if you look at the jury instruction in this case, particularly what's written on the second page, the elaboration of what excessive force means, I think there are certain phrases in there that are basically in tension with the holdings of Sconiers, and particularly when the jury is instructed as to that lengthy paragraph of considerations and you put it side by side with Sconiers, I think the jury can be misled to stray from the holding of Sconiers. And if I may just point out a couple of examples. As you know, in the second page of the written jury instruction, which was read to the jury, it says, you should consider the amount of force used in relationship to the need presented. Right? And Sconiers holds that sexual assault has no legitimate penological purpose. Well, that's right. But to determine whether it's sexual, if it's a sexual assault, it has no purpose. But to determine whether it's a sexual assault, you need to meet the constitutional threshold for malice and sadism, the excessiveness. And to determine that, isn't the amount of force, doesn't Sconiers specifically say, the amount of force? It gives it as example. One, you wouldn't use a significant amount of force if it was done for medical purposes. But you absolutely would if you're trying to, in a malicious way, hurt someone or embarrass or degrade them. I think the problem is that the way the jury instruction is written, and again, particularly the second page, there's just a high risk of confusion. I agree with you that a jury could apply the correct Sconiers analysis with this jury instruction, but it's just exceedingly difficult. Didn't we say in Sconiers that if it's not for a legitimate penological purpose, such as an appropriate search or a medical examination, and if it is then, therefore, done only for either the personal gratification of the official or to maliciously and sadistically harass the individual, then it's a sexual assault. And that a digital penetration of the anus for a sexual assault reason is always going to be serious improper behavior, regardless of how much force is used to conduct it. Because there's no legitimate purpose, if by definition we have established that there's no legitimate purpose, and it was done only to humiliate or to humiliate the individual or to gratify the official, then by definition it's a problem. I mean, haven't we already said that? Yes, and I think I appreciate the question because I think it helps answer Judge Luck's question, at least from our point of view, which is, and I want to be a little bit more specific if I may, if it's helpful to answer the question, is that I think the jury instruction could have, or not could have, I guess should have read, number one, whether the digital penetration happened, and two, whether the digital penetration was, let's say, to use the reasoning of Sconiers, was for purposes of sexual gratification or humiliation. I think that jury instruction would get at what the reasoning and holding of Sconiers is and basically dispose of the issue appropriately, I think, in a way that Judge Luck's question gets at. So let me ask you this. I mean, I'm going to tell you, I think the jury instruction could have been better. What I'm not sure of is whether it rises to the level of plain error. So if you could maybe home in on that for me, that would be very helpful. I think in our briefs, and I appreciate the question because I want to elaborate on what we argued in our briefs, and particularly on the issue of prejudice. Of course, generally, to establish plain error, you need to show not only that there was an error that was plain, let's stipulate for the sake of my answer to your question, Judge Rosenbaum, that it was, and then you need to show prejudice, and I think we in Appleese have a slightly different understanding of whether there was prejudice in this case and how the prejudice analysis applies. There are many cases from this circuit and the former Fifth Circuit that we cited in our briefs, or some of which we cited in our briefs, for example, the Pate v. Seaboard Railroad case, which, and I'm just going to quote from it, where a jury is given an erroneous charge which will mislead the jury or leave the jury to speculate as to an essential point of law, the error is sufficiently fundamental to warrant a new trial despite a party's failure to state a proper objection. I think there's a line of cases in this circuit in the form of that. Was that, in other words, was the excessiveness element really what was thought about at trial? It seems to me that this was a trial about did it happen, not how it happened. And the defense was tailored at this never, he's lying, this never happened, and he says no, no, no, this did happen, and the jury seems to resolve that fact against your client. So I guess how, in the prejudice, when we say does it substantially affect something and it's your burden to show, how can you show not just that it may have, but that it actually happened, or there was a substantial likelihood of it having been affected where this case doesn't seem to have been litigated on that fact? Well, unless I'm misremembering, Your Honor, what the record reflects is that the jury returned a general verdict, right, and it didn't make a specific finding about whether the digital penetration happened or not, although I understand that to have been the defense's The reason I was citing to the Pegg case, among others, and I won't belabor the point by giving you a string citation, but it's that an error that is plain, that so permeates a jury instruction and misleads the jury in the wrong analysis, is prejudicial almost without having to inquire as to the specifics of what the jury would have or would not have done given a correct jury instruction, especially in this case where the jury returned a general verdict. I understand that it's our burden to show plain error, but it's truly impossible to know what the jury was thinking. They did not ask any questions of the district court, they did not return any specific findings, they returned only a general verdict, and they were proceeding with a jury instruction that was permeated by a plain error because of its departure from Schoeners, and I see that my time is up, so . . . You've reserved some time for rebuttal, and we'll look forward to hearing from you then. Good morning. Good morning. I may please the court, my name is Jeanette Lugo, and along with me is John Waderholt seated at counsel's table, and we represent the appellees, Willie J. Lewis and Dean Kastner. Today we are asking that this court affirm the district court's judgment below, and just getting right to the first issue that appellant has brought up and which really seems to be the crux of the issues in the brief is the jury instruction. It is our position that the jury's instruction was not plainly erroneous and did not mistake the law so as to lead to an incorrect verdict. Appellant relies heavily on Schoeners, and for the position that sexual assault is per sensive, sadistic, and malicious, this court did not step away from what's a core judicial inquiry, which is the nature of force that's applied. But didn't we . . . I mean, we pretty much did say that if there's a digital penetration of the anus that is not for a legitimate purpose, but is rather for the humiliation of the prisoner or the gratification of the official, then that constitutes, quote, serious misconduct. I mean, didn't we say that? Yes, Your Honor. Okay. So, the question really for the jury is whether the jury believes that the official here digitally penetrated Mr. Lira's anus for . . . I'm sorry, Mr. DeJesus' anus for the purpose of humiliating him or sexual gratification, or whether he did not, in fact, engage in that action. I mean, that's really what the question for the jury was with respect to this issue. Would you agree? Yes, Your Honor. I would agree that that was the question, and it really does go to the fact that this originally started out as a pat-down search. Okay. And so, if the jury determined that it didn't believe Mr. DeJesus and it believed your client, then there's no sexual assault, and we don't get to sconeers, right? Correct. But, if the jury concluded that it did believe that there was a sexual assault that occurred, and by that I mean for humiliating the prisoner or for gratification of the official, okay, and not a legitimate, penological purpose, then the next question . . . then it should automatically be, under sconeers and what we said about at least this kind of sexual assault, it should automatically constitute excessive force. That's basically what we said in sconeers with respect to this particular activity. And so, then the question becomes, is that, you know, is that what the instruction conveyed? I'm not sure the instruction did convey that. I think, you know, and in fairness to the district court, it did not have the benefit of sconeers, so it wouldn't have known to do this. But, you know, in retrospect, the question then would have become for the jury, well, I mean, then the instruction would have been, well, if you find that it was done for no penological . . . with no legitimate, penological purpose, and was done for the humiliation of the prisoner or the sexual gratification or the gratification of the official, then you must find excessive force. But instead, it sort of left open this notion that there might be a possibility that even if you find that the act occurred, it might not rise to the level of excessive force because you have to consider, you know, how hard he did it or whatever. And that's just, that's not correct under sconeers. So it seems like since the instructions would have allowed the jury to return a verdict for your client even if they found a sexual assault had occurred, and I don't want to keep defining it, you know what I mean, isn't that a problem? I guess let me ask you to start from this. Do you disagree with any of the premises that I have set forth up to here? That is, that if, if the jury concluded that a sexual assault had occurred, that it still could have found your client not liable under the instructions. Do you disagree with that? And, and to your question, Your Honor, so you're asking if my client could have still not been found liable even if a sexual assault had occurred. Right, under these instructions. I do not think that at that point the client could have not been found liable because under, and we're talking under the framework of sconeers. But I'm asking under these instructions. Under these instructions. Because, because of course, you know, the district court didn't have the benefit of sconeers and neither did the jury. So just looking at these instructions, would it have been possible for a jury to conclude that a sexual assault occurred and also return a verdict in favor of your client? Because it concluded that even though it was a sexual assault, in the grand scheme of things, you know, having a finger put in the anus is, is not, you know, malicious and sadistic. I think that they still could have found my client liable at that point under these instructions. I guess the question is, could they have found him not liable under the instructions? I would say they could have, so you're asking, Your Honor, if they could have found him not liable under these instructions. Right. Even though they found that a sexual assault had occurred. Because they just found, you know, this isn't that serious. He didn't show a lot of force was used. And it's possible to commit, you know, a digital penetration of the anus in a way that's, even though not for a legitimate penological purpose, and even though a sexual assault, it's possible to do it without excessive force. I think the jury instructions, though, did allow for the jury to consider, even if it regardless of the significance of it, it could still be malicious or sadistic. And that was part of the jury instruction. But my question is, would it be possible for the jury to have found your client not liable, even though it found a sexual assault under these instructions? And if your answer is yes, then my question is how? No, I think that if they were to have found that a sexual assault occurred and looking at the factors to consider, even if the jury were to find that the extent to which the injury here occurred, or whether it be not as significant, if it was still a sexual assault, I still think that they would have found, otherwise, that it was excessive. How would they do that under these instructions? What part of these instructions would you point to that would require a jury, upon finding sexual assault, to return a verdict in favor of Mr. DeJesus? I would point, Your Honor, to, again, the eighth page of the jury instructions, which says, of course, officers may not maliciously or sadistically use force to cause harm, regardless of the significance of the injury to the prisoner. Okay, but let me ask you, what if they found that it didn't rise to the level of malicious or sadistic? I mean, some people have in mind a thought of what sadistic and malicious means that maybe it doesn't rise to. I mean, is it possible? Maybe it's not possible. I'm just really asking, I'm curious as to what your position is on this. Because I will tell you, as I told your friend over here, that I think that the instructions could have been written better, but in fairness to the district court, I understand why they were written this way, because that's what the law was at the time. So I don't fault the district court at all. Nevertheless, having said that, I'm kind of on the fence about whether it's plain error or not. I think it's not great, but whether it rises to plain error, that's what I'm trying to establish in my own mind. And I think the purpose of having malicious and sadistic in the instruction itself allows for this differentiation between the types of force that exist. And the jury instruction does talk about not every push or shove actually rises to a certain level of force. Yes, but we've said in Sconeers that every digital penetration for the purposes of a sexual assault does rise to that level, right? I mean, we've said that. Isn't that the issue, though? It's the for the purposes? So as I understand it, the way, so the questions that you were asked were if the jury determined a sexual assault. But that's actually not how this case was litigated, right? The way this was litigated is question one was, did the insertion happen? In other words, as a matter of fact, did it happen? And then only if that happened, the jury's then asked, was that insertion excessive as defined under the Constitution, right? And to do that, let's look to Sconeers, because Sconeers actually tells us. So I'm looking at page 1266, and it says, the Eighth Amendment prohibits force that offends contemporary standards of decency, regardless of whether significant injury is evident, though the extent of injury may shed light on the amount of force applied or whether the use of force could plausibly have been thought necessary. And so what the jury is asked in the second thing is the question of, is this legitimate? In other words, is this the type of search that is allowed? Or is this, to use the exact phraseology of Sconeers that Judge Rosenbaum has mentioned, which is done for the purpose of humiliating either the prisoner or for the sexual gratification of the corrections official. And the only way for the jury to determine that is to consider a bunch of different factors, right? Correct. So does Sconeers lay out exactly that pattern of what factors are to consider or not? Does it? Does it actually lay out the factors for a jury to consider? How do you determine legitimate searches from those that are clearly, clearly not legitimate? I think that it does, and the fact that if it's not for a medical purpose or to further some penological interest of the institution, then it's going to be for some other purpose, and we're measuring then whether that is malicious and in fact sadistic. Is that a jury question? Whether it's malicious and sadistic, I don't believe that that necessarily has to be a jury question. Well, it is a jury question, but not necessarily laid out as an element of the instruction. I think in a way it has a rhetorical kind of function. Wasn't though excessiveness defined though as that which is malicious and sadistic? Yes. In other words, done for a non-legitimate purpose. Yes, and I think sadistic and malicious intent goes toward that determination of whether it is in fact excessive. But didn't we say in Sconeers that with respect to the subjective element under the Eighth Amendment, that digital penetration without legitimate penological purpose is necessarily sadistically and maliciously applied, and on the objective element, didn't we say that a guard who sadistically, maliciously forces his finger into an inmate's anus, as Sconeers accuses Lockhart of doing, plainly commits, quote, severe sexual abuse of a prisoner and violates the Eighth Amendment? Yes, that was stated, and I also think what's important to point out in that opinion was that if Sconeers could prove to a reasonable jury satisfaction that Lockhart sadistically and maliciously forced his finger into Sconeers' anus, Lockhart's actions violate the Eighth Amendment because they can constitute severe sexual abuse of a prisoner. And so that actual phrase, sadistic and malicious, the jury is considering it, however, we are not adding that as an additional element. Again, I was saying this in many ways is a rhetorical kind of function, that it really allows the jury to understand what the nature of the force is, how inherently cruel it is. And so the jury is able to decipher, if they even reach the question of whether it's beyond that a sexual assault occurred, and now we're talking about, we're not even talking about force anymore, it's occurred. Can I just get your help here? I mean, who knew that we would have this series of cases about what instructions juries should be given about the digital penetration of prisoners? I mean, I think we can all start from the point, I mean, this is a question, a sexual assault, assuming it was a sexual assault, cannot serve a legitimate penological purpose. Do you agree with that? I agree with that. Okay. Thank you. So then, you know, I mean, you never may, or the trial counsel never made the argument, this, whatever happened here was for a medical purpose or, you know, in the course of a legitimate search. It was, your defense was merely, it didn't happen. Correct. And so, to me, it seems like we could avoid all of this and add some clarity if the instruction was, look, once you've decided a sexual assault took place, we're not going to require you to decide, okay, well, how bad was he injured? I mean, once you decide a sexual assault has taken place, that is, that serves no penological purpose, and, you know, that court, that case goes down one track. I mean, doesn't that sound right to you? That does sound correct, Your Honor, and right. At the point it is a sexual assault, it serves no purpose. At that point, that would further the penological interest. Okay. You're here. And so, you know, when you've got a jury back there saying, well, you know, this, you know, inmate was digitally penetrated, but it really didn't hurt him that bad. I mean, that's not, we don't, that's not where we want to go with this. That's not, and the Prison Litigation Reform Act certainly stepped away from that when it was amended in 2013, that it doesn't have to be a prior showing of physical injury. Mental and emotional injury is enough in the context of sexual assault. You know, my goal for this case is to, you know, give some clear guidance going forward on these jury instructions. And it sounds like you might be good with that because she won't be back here arguing this kind of case again, right? Well, Your Honor, I do think as the instructions were laid out, were not plainly erroneous and I think it really goes under the prejudicial analysis based on the evidence. I understand the standard. Yes, but, you know, it looks like to me the jury could have found, you know, that the act happened, but it really, you know, wasn't cruel and unusual punishment. And so, I think we just need to clean that up going forward, don't you? Well, it would prevent us from arguing here today, but I do think that the jury did not get to reach certain questions because they found that it did not in fact occur. So, I do think that's critical here. I get that. Okay. So, you would be okay with us finding it was error as long as we didn't find it was plain error? I wouldn't say that it was, Your Honor, based on the evidence that came in that would support the verdict that the jury came back with. There was no evidence that it had occurred. There was conflicting testimony, of course. Right, but I'm just saying for the jury instruction itself. That I would have no problem with it being found in error as long as it's plain error. No, we're talking about, you know, guidance for future cases. If it's a sexual assault, it doesn't serve a penological purpose, right? That's the law. It doesn't serve a penological purpose, but I don't think under the facts of this case that the jury instruction was plainly erroneous. I've got that. I hear you on that. I am out of time unless the Court has any additional questions. Thank you. Thank you. Counsel, as you're putting on the little microphone, I don't know what else to call it. Oh, I can think of a couple of things. Really? Yeah. I don't know. How does a jury determine between or if something is a sexual assault or not? What factors must a jury consider to determine it? Because I think everyone agrees in this room that if a sexual assault happens, it does not matter the extent of injuries there. And the jury instruction says injuries can be nominal. It says if it's malicious and sadistic, it doesn't matter how much it is. Everyone agrees on that principle. How does a jury determine, though, between this kind of legit search and this kind of thing which is clearly not legitimate? What do we tell the jury? I can answer more broadly, but I'm going to focus on digital penetration cases since that's what SCOTUS is dealing with and that's what we're dealing with. Obviously, sexual assault can mean any number of other types of conduct. Sure. I think in a digital penetration case, one, did the digital penetration occur, and two, was it for purposes of humiliation or sexual gratification? I think you said so yourself earlier, Your Honor, that— Let's say it started as a legitimate search but turned into something that clearly was done for purposes of humiliation or the sexual gratification. Does the amount of force or the way it was done affect that analysis? I would say no. I mean, I would say that— Doesn't Scaniers explicitly state that, at least objectively, to determine whether something's a sexual assault or not for Eighth Amendment purposes? The way it was done does kind of matter, right? I hate to be so vivid because I can't help it in answering your question. No, do your job. As I'm understanding the hypothetical, it's that an inmate is digitally penetrated or a legitimate, whether it's search or medical or God knows what purpose, that purpose ends, and the digital penetration continues for purposes of humiliation or sexual gratification. That's an Eighth Amendment violation, period, right? The second the legitimate purpose ends, so I guess that would be my answer. And I guess my question is, in defining that line, because these are hard— This case is less an issue for the reasons that Judge Martin said, because this really is whether it happened or not. But in cases where it's a close call, because that's really what we're writing for, right, is the close cases, what factors is a jury to consider? Because it seems to be more than just is it legitimate, penological, or not. That sort of begs the question, what is legitimate? What makes something legitimate? And what makes it for humiliation or for purposes of sexual gratification? Well, that's tough, and I don't—I haven't seen it to date until you asked the question, Your Honor, as essential to our argument to sort of elaborate on what it means to do it for sexual gratification or for purposes of humiliation. That strikes me as a jury question, right? Let me ask you this, then. I mean, it may be hard to differentiate the factors to consider beyond what have already been differentiated with respect to sexual assault in general, maybe, maybe, right? But we've already said in Sconeers that a digital penetration that is not for a legitimate penological purpose is a sexual assault, and that is excessive force, right? Haven't we already said that? Okay, so it strikes me as maybe that's—at the very least, that would be a special category where it would always be excessive force based on Sconeers. Is that what your argument is? Yes, and I wouldn't presume to start drafting new pattern jury instructions now, but I think that would be a salutary solution to the problem, to explain to the jury whether—even on the second page of this jury instruction, as counsel said, page 8 of Docket Entry 43, at least a sentence that explains that in this category of cases, we're not looking at extent of force, we're not looking at extent of injury. This is a categorical Eighth Amendment violation when it's—if you, the jury, so find that it's for a sexual gratification or humiliation purpose. And I recognize it maybe isn't your concern, but I understand Judge Luck's concern also, I mean, it would be kind of strange to just have a special jury instruction in digital penetration cases as opposed to all sexual assault cases. So I don't—I mean, it's not that we can't do it. Of course we can, but it would be unusual to do that, and so I think that's where he's coming from in asking you whether you have some other suggestion, but on the spur of the moment, it's the kind of thing I think it probably considers—it probably takes some considered judgment and thought if you—if one can even come up with something, but— I think I understand the two sets of questions better now, and I'm afraid I don't have a good answer. But let me ask you—let me ask you this. If, in determining that line, because we agree that the jury needs to determine that line, where did the jury instruction go wrong in the general case, in the general sexual assault case? Where did the jury instruction go wrong when it said, in determining that line, whether it's legitimate or not, consider motive, consider manner, consider force used, consider these other things. But if it's done maliciously and sadistically, no matter how much injury or force was done, that is never legitimate, right? Yes. I think, if I'm understanding your question, and correct me if I'm wrong, in a non-digital penetration case where the plaintiff alleges another type of sexual abuse, I guess my answer today would be that the general excessive force jury instruction would be appropriate. I can't visualize what that other type of abuse would be. I can't give you a hypothetical. In the digital penetration case under Sconears, I think the analysis has to proceed differently. Was there a digital penetration, and what was the purpose? And yes, that's a tough question in a hypothetical case. It can be hard for the jury to determine motive, but that's already part of the Eighth Amendment analysis. I think the proper order of operations in a digital penetration sexual assault case is, did it take place, and was it for one of these improper purposes, gratification or humiliation? And that's it as far as the violation is concerned. Okay, I'm out of time. So, of course, we would ask that this court vacate the judgment and remand for a new trial. Thank you very much. Thank you. We appreciate your help to the court and representing Mr. DeJesus. My pleasure.